## The Delaware, Lackawanna and Western Railroad Company *vs.* The Erie Railway Company.

1. Under the acts of March 4th and 11th, 1858, (*Pamph. Laws* 204 and 312) the Delaware, Lackawanna and Western Railroad Company have a right of way through the Bergen tunnel, and the consequent right to connect their tracks with those running through the tunnel.

2. A receiver will not be appointed to supersede permanently the managers of a railway, and to take entire charge of the affairs of the road. But where two railroad companies possess a community of interest in the property in dispute, (as for example, being tenants in common of an easement), this court will exercise judicial control over their conduct towards each other, in order to protect their respective rights.

3. Under the acts of 1858, the Erie Railway Company's trains of every description, have the right of precedence over those of the Delaware, Lackawanna and Western Railroad Company through the Bergen tunnel. But any unlawful use of this privilege, with a view to embarrass or impede the Delaware, Lackawanna and Western Railroad Company in the use of the tunnel, or the road connected with it, will, upon a proper case being made, be a ground of interference by this court. Such case, however, is not made by the present pleadings.

4. The contract of November 1st, 1859, between the Long Dock Company and the Hoboken Land and Improvement Company, the (grantors of the defendants and complainants respectively,) limits the trains having precedence through the tunnel, to those run in conformity with the time tables,

and those trains only, at the present stage of these proceedings, will be allowed precedence.

5. That part of the regulations of the Erie Company giving preference to extra or irregular trains, enjoined.

6. The appointment of a receiver or manager of the tunnel, refused.

An original bill* was exhibited by the Erie Railway Company, to compel the Delaware, Lackawanna and Western Railroad Company to pay certain tolls for the use of the railroad through the Bergen tunnel, of which the first named company are the lessees. It was shown that this tunnel was constructed by the Long Dock Company, which company, on the first of November, 1859, granted to the Hoboken Land and Improvement Company, and their assigns, a perpetual right of way over certain lands and premises, and through the said tunnel, for a single or double track railroad, including the right to use the track in said tunnel; provided that the use by said grantees should not at any time be such as to interfere with, obstruct, or delay the running of any trains of the New York and Erie Railroad Company, according to such time tables as they should from time to time adopt. The rights of the Long Dock Company are now vested in the Erie Railway Company, and those of the Hoboken Land and Improvement Company in the Delaware, Lackawanna and Western Railroad Company.

This bill further showed, that by two several acts of the legislature, the first approved on the 4th of March, and the second on the 11th of March, 1858, the said tunnel and railroad were made a public highway, and free to the passage of all locomotives and trains on the payment of toll, with a further provision that they should be so regulated as to the time of starting, running, rates of speed, and tonnage, as not to interfere with the use and occupancy of said railroad

*The suit upon this bill did not come to hearing. The matters in controversy were adjusted by an agreement between the companies.

by the New York and Erie Railroad Company, or their assigns. The bill then averred, that the road authorized by the contract was never built, but that the Delaware, Lackawanna and Western Railroad Company are using the tunnel for the purposes of an entirely different road, which they have no right to do, unless on the payment of tolls. That this last named company have constructed a branch to their main road, known as the Boonton branch, that they have laid three rails on each track for the passage of cars of four feet, eight and one-half inches gauge, and cars of six feet gauge, and that they claim that the cars coming over said branch, shall go through the tunnel under the before mentioned contract, without the payment of tolls. That this claim is unfounded. That the Erie Company have served time tables on the Delaware, Lackawanna and Western Railroad Company, and requested them to conform thereto, with which request they have not complied, but, on the contrary, run their trains so as to obstruct and delay the trains of the Erie Company. This bill prayed an injunction requiring the defendants to refrain from using the railroad through the tunnel so as to interfere with the use thereof by the Erie Company, and to refrain from the use of the said tunnel, except on the payment of tolls. There was also a prayer for an account, &c.

The Delaware, Lackawanna and Western Railroad Company filed a cross-bill, making the Erie Railway Company the defendants, wherein they complained that the latter company had prevented them, by force, from connecting their Boonton branch road with the broad gauge tracks in the tunnel, and that the said defendants had altered, without their consent, certain regulations for the use of the tunnel which had been established by mutual agreement, and which new regulations were unfair and unreasonable, giving a general precedence over the tunnel road to all the trains of the Erie Company. This cross-bill prayed that the Erie Railway Company might be restrained from opposing the connecting of the Boonton branch with the tunnel.

road, and from enforcing said new regulations, and that if necessary the court should establish a schedule of regulations, and appoint a receiver to see them executed.

The argument came on upon the motion for the injunction asked in this cross-bill, and was heard on the pleadings and affidavits, before Beasley, Chief Justice, sitting for the Chancellor.

*Mr. Vanatta, Mr. C. Parker,* and *Mr. Williamson,* for complainants.

*Mr. Abbett, Mr. E. T. Green, Mr. J. P. Stockton,* and *Mr. Gilchrist,* Attorney-General, for defendants.

THE CHIEF JUSTICE.

The first prayer of the cross-bill is, that the complainants, the Delaware, Lackawanna and Western Railroad Company, may be protected by this Court in the exercise of their alleged right to connect the broad gauge tracks of their Boonton branch road with the broad gauge tracks of the defendants, the Erie Railway Company, at the west end of the Bergen tunnel.

The principal ground taken on the argument, in opposition to this claim, was, that this branch road had been constructed without any legislative sanction, and consequently had no legal existence. In the opinion* prepared by me with respect to the second controversy which has sprung up between these same parties, I have stated my conclusion to be, that this branch road, so far as the same affects the Erie Company, must be regarded by this court as a legal structure, and with this result as a starting point, it is not perceived how any other end can be reached than that the prayer of the complainants, in this particular, must be granted.

Taking the lawful existence of this Boonton branch road.

* Ante p. 284.

as a datum, there seems to be no reason, which is even plausible, to be urged against this claim to connect such branch with the tunnel road. It is true, that there is fair ground for the Erie Company to insist, as they do insist, and this I regard as the substantial matter in dispute, that the business of this branch cannot pass through the tunnel without the payment of tolls, but this quite lightly touches the question as to the right of way through this tunnel. On the hypothesis that this view of the Erie Company is the correct one, and is founded on a just construction of the contract of November 1st, 1859, it seems obvious that the complainants have the right of way claimed by them. This right under such an interpretation of the agreement, would then arise out of the acts of the legislature, passed in the year 1858, making this tunnel, and the road through it, a public highway for the use of all railroads. And it is certainly a matter of surprise that the defendants in this cross-bill should have ventured to resist by force the making of this connection, when in their own bill, then on file in this court, they had expressly stated that such connection was about to be made, and without controverting the right to make it, had simply insisted that the trains coming over such branch would not be entitled to a passage through the tunnel without the payment of tolls. But, as I have said, upon the premises, which for the present I must assume, the right to make this connection is incontestable, for, if this branch is to be considered as within the contract above referred to, then by force of the express terms of such contract the junction of these tracks is authorized; and if on the other hand such contract is inapplicable, still the right to connect is equally evident in view of the statutes just mentioned. The consequence is, the defendants must be enjoined from further resisting the connecting of this branch road through its wide gauge tracks with their own road at or near the tunnel.

The next question presented by these proceedings is one of much importance. It is that which relates to the rela-

tive rights of these parties to the use of the Bergen tunnel. With respect to this subject the complainants contend that they have acquired their rights from the contract of November 1st, 1859, while the defendants controvert this, and allege that whatever rights the complainants possess, are conferred by the acts of the 4th and 11th of March, 1858. It will be necessary, therefore, to consider briefly both these sources of title. There is, however, a preliminary objection that was started on the argument which must first receive attention. It was insisted that over a matter of this kind this court had no jurisdiction. The bill asks that, if deemed necessary, regulations should be established by this court controlling the use by these companies of this tunnel, and that a receiver should be appointed to oversee the execution of such regulations; and it was the existence of this power which was denied on the side of the defendants. I have examined the cases cited, but have not found that any of them sustain the objection. These authorities go no further than to say, that a receiver will not be appointed to supersede permanently the managers of a railway and to take charge of the entire affairs of the road. The doctrine has not been extended beyond this, and to this extent it is sanctioned by the cases of *Russell* v. *East Anglican Railway Company*, 3 *Mac. & G.* 125, and *Fripp* v. *The Chard Railway Co.*, 11 *Hare* 254. These decisions rest on the practical difficulty the court would encounter in any endeavor to conduct, through its officers, the business of a great railway. But because such a function is difficult, it does not follow that it is either difficult or improper for the court to control two or more companies in the enjoyment of property, or a franchise which is held in common, or in which there is a right to a common use. I find nothing in these cases just referred to, nor in any other, which forbids the exercise of such a power as this latter one; but, on the contrary, there are authorities of decided weight that have the opposite tendency. Where two railway companies had agreed to use a railway station jointly, no doubt seems to have been

entertained, in *The Shrewsbury Railway Co.* v. *The Chester Railway Co.*, 14 *L. T.* 217–433, that the Court of Chancery had power to prescribe rules for the use of such station, and to appoint a receiver. See, also, the case of *The Midland Railway Co.* v. *Ambergate Railway Co.*, 10 *Hare* 359. In the case before me these parties possess a community of interest in this property. They are tenants in common of an easement, and if this court cannot protect the one against the injustice of the other, the party whose rights are invaded is clearly without any adequate remedy; for it is certain that either of these companies, thus situated, can so act with respect to the common easement as to render it worthless to the other, and thus bring upon the latter incalculable mischief. The general cognizance of equity in cases of this kind, where property is enjoyed in common, will not, it is presumed, be disputed by any one, and I can perceive no reason why this power should not exist where two railroads are such tenants in common, as well as in other cases. In truth, as these companies, although technically private corporations, are in some measure public agents, there exists in such cases as the present, an additional reason why a judicial control should be extended as far as possible over their conduct towards each other. I have no doubt as to the jurisdiction of this court over this subject, and shall not scruple, therefore, to exercise it to the fullest extent that the circumstances of the case may now, or at any time hereafter, appear to require.

To return, then, to the question as to the extent of the rights of these respective parties. I have said that the complainants claim a right to the easement in controversy, by force of the contract dated November 1st, 1859. The parties to this contract are the Long Dock Company of the first part, and the Hoboken Land and Improvement Company of the second part, the rights of the former being now in the Erie Company, those of the latter in the Delaware, Lackawanna and Western Railroad Company. A right of way for a railroad with a double track is given by this instrument to the

Hoboken Land and Improvement Company over certain lands, the property of the Long Dock Company, and also to the use of the Bergen tunnel, but such rights I think are very clearly subordinated to the rights reserved to the Erie Company. Such subordination was, it is true, drawn in question on the argument, but the language of this instrument is entirely clear, at least to this extent. But the extent of the subjection of the right conferred to the right reserved is a question in which I think there is much obscurity, and this is the only question with which I am at present interested, for I shall not attempt in any other respects to construe this contract. Whether this contract authorizes these complainants to transport their passengers and freight over their present roads through this tunnel, without the payment of toll, is an inquiry that I do not propose to enter upon until the final stage of this cause. All that presses for immediate decision is this question as to the right of precedence through the Bergen tunnel, and the extent to which such precedence under existing circumstances is to be enforced. I have already said that in my opinion this contract gives such a precedence to the Erie Company; it but remains to inquire therefore as to the measure of that right. For this purpose we must look to the language of the instrument itself. This deed first grants to the Hoboken Land and Improvement Company, and their assigns, a perpetual right of way over the said land and premises "and through the said tunnel, for a single or double track railroad," not interfering with the track or the road to be laid by the Long Dock Company for the use of the New York and Erie Railroad Company, but including the right to use the said track or any part or parts of the same on said lands or in said tunnel, "not interfering with the use thereof by said New York and Erie Railroad Company." After this follows the clause upon which the present question depends, *viz.* "And the use of any tracks upon the lands on which the said New York and Erie Railroad is located, shall not at any time be such as to interfere with,

obstruct, or delay the running of any trains of the New York and Erie Railroad, according to such time tables as they shall from time to time adopt." After much consideration, my construction of this clause is, that thereby the New York and Erie Railroad Company had reserved to them the right to prescribe time tables for the running of their own trains, and that such trains so run were not to be interfered with, delayed, or obstructed by the Hoboken Land and Improvement Company, or their assigns. The provision relating to time tables is, in my judgment, a limitation on the right reserved. If the whole of such provision be struck out of the clause, it will then leave the right reserved to the Erie Company without any qualification, and if the provision therefore is to have any effect, it must be to restrict the right reserved. The first branch of the clause declares that the use of the tracks by the Hoboken Land and Improvement Company shall not be such as to interfere with, obstruct, or delay the running of any trains of the New York and Erie Railroad Company; and if the clause had stopped here, the Erie Company would have possessed, what it claims to possess, the right to an unobstructed way for all its trains of every description, whether such trains should have been run according to a time table adopted by them or not. But the clause does not end at this point, but proceeds to say that the "running" of the trains so preferred shall be "according to such time tables" as shall be adopted by this company from time to time. It is much to be regretted that this sentence does not more clearly express the intention of these contracting parties; but looking at it as it stands, and giving effect to all its parts, I have drawn the conclusion above expressed, that it was designed to give a preference not to all the trains of the Erie Company, but to such only as may be run in conformity to time tables from time to time adopted by that company. Under this view, extra or irregular trains would not be entitled to any precedence. But the statutes of 1858 go, I think, beyond this point, and give a greater superiority to the trains of

this company. The former of these acts declares, in general terms, that " the tunnel and railroad now being constructed under and through the Weehawken or Bergen Hill," "shall be a public highway, and free to the passage of locomotives and trains and all railroad carriages thereon with passengers and property, upon the payment" of certain tolls. The subsequent act further provides, that all locomotives and trains which shall be run over the said road by the force of these statutes, " shall be so regulated as to the time of starting, running, rates of speed, and tonnage, as not to to interfere with the use and occupancy of said railroad by the Long Dock Company or the New York and Erie Railroad Company, or their or either of their grantees or assignees." I can see no uncertainty in this language; it clearly requires every railroad company in the exercise of the statutory privilege, not to interfere in anywise with the " use and occupancy" of the two companies designated. The preference in the use of this tunnel and road thus given, unlike that reserved in the contract already expounded, is not diminished by any subsequent limitation or qualification. Where these acts are applicable, I think their effect is to give to the Erie Company the right to require that precedence in the use of the tunnel shall be yielded to all their trains of every description.

This of course does not mean that this company can lawfully make use of this privilege with a view to embarrass or impede the complainants in the use of this tunnel or the road connected with it. Such conduct would be an abuse of the paramount right of the defendants, and upon a proper case being made, would be so regarded and dealt with by this court.

But this is not the case made by the present bill, for there is nothing apparent, at least upon these pleadings, which shows that the defendants are using the rights which belong to them by way of vexation to the complainants.

It is true that they have recently established certain regulations, but I think, under present conditions, I must

infer that such regulations were fairly required by the needs of their own business. But on the supposition that these regulations have, in point of fact, been fairly made, the question is before me whether as these parties are at present situated, such regulations are to be permitted to stand. They have been made by the defendants for the purpose of giving precedence to their trains of all grades over the trains of all grades of the complainants; and if it were settled that the complainants were using this tunnel by virtue of the statutes of 1858, I should have no difficulty in sustaining this exercise of power. But such is not the admitted status of the complainants, for they insist that they have the right to use and are using this easement by the authority and under the terms of the contract above mentioned, and if this be so, the regulations in question are in my opinion, to some extent, illegal and improper. Whether the complainants are right in this position that they have the present use of this easement by right of this contract, is the subject lying at the bottom of this case, and I do not think that I should at present express any opinion with respect to it, if it is practicable to dispose of the present motion on other grounds. It seems to me a question full of obscurity and difficulty. The structure of the instrument which gives rise to it is so confused, and its language is so indefinite, that I much doubt whether, with all the light which circumstances may eventually throw upon it, it can be ever interpreted or applied by any judicial tribunal with entire satisfaction to itself. I shall therefore wait, before attempting its exposition on the main point of this controversy, for all the aid to be derived from the proofs in the case and the argument of counsel on the final hearing. I am enabled, I think, to do this, because the circumstances of the case are such as to put it in my power to control sufficiently for present purposes, the use of this tunnel by these companies. The circumstances upon which I rely are the following:

In the year 1865 these companies established, by mutual

agreement, certain general regulations of the use of the Bergen tunnel. I was strongly impressed with the necessity of that act, as well as for vigilance on the part of this court, from the testimony of a witness who is an officer holding an important post in the service of the defendants, and who, referring to that period, says: "At that time trains were being run through the tunnel without being obliged to stop at either end, and I consider that only a special Providence prevented serious accidents, as engineers of both roads would run to get in the tunnel first, and would follow each other too close for safety, as I thought." This state of affairs, which shows great culpability in those who at that time had the management of these companies, was succeeded by the system of rules to which I have just referred, a system which, in an eminent degree, seems adapted to secure the safety of travelers and other persons passing over these roads. By those regulations the Erie trains had the right to enter the tunnel in advance of the trains of the Morris and Essex of the same class. Those regulations appear to have continued in force until some time last June, when the defendants served upon the complainants a notice that they had altered them, to the effect that all time-table trains on the Erie Railway were to have the right to the road through the tunnel in advance of any trains on the road of the complainants, and that no train of the complainants would be allowed to enter the tunnel ahead of any time-table passenger or freight train on the Erie Railway, when, by so going ahead, the Erie train would be delayed. The last clause of this amended regulation contained the following requisition: "An extra or irregular freight train on the Erie Railway, at the tunnel at the same time with any train on the Delaware, Lackawanna and Western Railroad, will have the right to the road in advance of the train on the other road." This alteration of the existing arrangement was objected to, and its enforcement resisted by the complainants. About this same time, the defendants caused a notice to be served on

the complainants, informing them that they claimed tolls of them for the use of the tunnel, as they denied all right to its use by virtue of the contract.

This demand was likewise rejected, and thereupon the defendants, to settle these two questions, filed the original bill in this cause. In this bill it is stated that the Delaware, Lackawanna and Western Railroad dispute their right to alter those regulations, and they complain that the employees of that company prevented them from being carried into effect. This bill also admits that those regulations cannot be enforced without danger to passengers. And it was to have these matters quieted and settled that the Erie Company came into this court. It also, I think, appears in this case that these points in dispute were to be considered as practically waived on both sides during the pendency of the suit. But the papers before me make it quite manifest that these hostilities have not ceased, even temporarily; this appears from the cross-bill and the answer to it. It is also evident that this state of things is not unattended with danger to the lives of those who travel upon these roads.

From these facts, I feel both authorized and compelled to define, as far as at present practicable, the right of these competing parties, under the peculiar circumstances above detailed. With their bill on the files of this court, seeking an adjudication of these same matters, I do not think the Erie Company should be allowed to enforce those regulations, thus altered, without the consent of the other side, except in those particulars with respect to which their power is indisputable. I have already stated my opinion to be, that in any event the only limitation on the right of this company to precedence in the use of this tunnel is that contained in the contract of 1st of November, 1859. By force of that limitation their right to precedence is restricted to those trains running according to time-tables adopted by them. It may be that by the ultimate decision of this case, it will appear that this contract is to be the measure of the

rights of these parties, and until that stage of this cause shall have been reached, it cannot but be in doubt whether the Erie Company have any priority of way, beyond the limit just mentioned. The right to precedence for the time-table trains being clear, so far as these new regulations enforce that precedence I shall hold them to be legal, and they must be submitted to accordingly. Beyond this I do not think these regulations ought at present to extend, and I shall therefore enjoin that part of them which gives a preference to extra or irregular trains. Under existing circumstances, it does not seem to me necessary or advisable to appoint a receiver or manager of this tunnel. The signals and other apparatus provided, and the rules for the running of the trains which have been established, are amply sufficient, if properly applied and enforced, to make the use of this part of the road perfectly secure. With their rights thus provisionally settled, I do not anticipate any further strife, even on the part of the subordinate agents of these parties. It is the obvious and imperative duty of those at the head of affairs to see that no such strife occurs, and it is assumed with confidence that they will, to the utmost of their ability, discharge that duty.